IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHERYLE W. HALL,                    )
                                    )
          Petitioner,               )
                                    )
v.                                  )          CIVIL ACTION NO. 09-0031-CB-N
                                    )
MICHAEL J. ASTRUE, Commissioner     )
of Social Security,                 )
                                    )
          Respondent.               )

## REPORT AND RECOMMENDATION

This matter has been referred to the undersigned Magistrate Judge to conduct a

hearing and enter a Report and Recommendation, pursuant to 28 U.S.C. §636 and Local

Rule 72.2(c)(3).[1]  Upon review of the briefs of the parties and the record as a whole, the

undersigned recommends that this matter be REVERSED and REMANDED to the

Commissioner for further proceedings consistent with the court's order.

## Facts

Born in 1958, Sheryle W. Hall, ("Claimant") was forty-eight years of age at the

time of the hearing on November 16, 2006, before the Administrative Law Judge.

Claimant has a high school diploma and one year of college coursework.  She filed a

claim for SSI benefits on December 22, 2005, alleging that she was disabled on the basis

of degenerative disc disease, "gyn problems[,]" elevated cholesterol, allergies,

---

[1]  The parties motion to waive oral argument (doc. 19) was granted on September 29, 2009. (doc. 20)

hypertension and depression.  She was last employed in 2001[2] as a cook at a restaurant in

a Sam's Club retail store.  Her past relevant work experience included positions as a

cashier and as a cook.

<u>Scope of Judicial Review</u>

A limited scope of judicial review applies to a denial of Social Security benefits by

the Commissioner. Judicial review of the administrative decision addresses three

questions: (1) whether the proper legal standards were applied; (2) whether there was

substantial evidence to support the findings of fact; and (3) whether the findings of fact

resolved the crucial issues.  <u>Washington v. Astrue</u>, 558 F.Supp.2d 1287, 1296 (N.D.Ga.

2008); <u>Fields v. Harris</u>, 498 F.Supp. 478, 488 (N.D.Ga.1980). This Court may not decide

the facts anew, reweigh the evidence, or substitute its judgment for that of the

Commissioner. If substantial evidence supports the Commissioner's factual findings and

the Commissioner applies the proper legal standards, the Commissioner's findings are

conclusive. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439-40 (11th Cir.1997); <u>Barnes v.

Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir.1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529

(11th Cir.1990); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir.1987); <u>Hillsman v.

Bowen</u>, 804 F.2d 1179, 1180 (11th Cir.1986); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233,

1239 (11th Cir.1983). "Substantial evidence" means more than a scintilla, but less than a

---

[2]  At the hearing before the ALJ, Claimant testified that she thought her last day of work was in 2003.  *See* doc. 11 at 136.  The correct date is not necessary to the court's determination. Where they are undisputed, and are supported by the record, the factual findings made by the ALJ are of primary relevance in addressing this appeal. <u>Wilson v. Barnhart,</u> 284 F.3d 1219, 1221 (11th Cir. 2001).

preponderance.  In other words, "substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  Richardson v. Perales, 402 U.S. 389 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir.1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive  evidence" of the ALJ's decision.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir.1991). In contrast, review of the ALJ's application of legal principles is plenary.  Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir.1995); Walker, 826 F.2d at 999.  With this legal framework in mind, the court now turns its focus to claimants assignment of errors by the ALJ.

Issues

I.    Claimant asserts the Commissioner failed to fully and fairly develop the record.

Claimant first contends that the ALJ erred by failing to fully and fairly develop the record.  Claimant argues, in sum, that because she was unrepresented at the hearing the ALJ had a heightened duty to ensure that the record was complete.

The ALJ's duty to develop a full and fair record exists even if the claimant is represented by counsel or has waived the right to representation.  Id.  However, "[w]here the right to representation has not been waived...the ALJ's 'basic obligation to develop a

full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him." Id.  In carrying out this duty, an ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Smith v. Schweiker, 677 F.2d 826 (11th Cir.1982).  In this present case the Claimant was not represented by counsel at the hearing. However, the record before the court reflects that claimant waived her right counsel.  *See* doc. 9 at 123-24. [3]

Because a hearing before an Administrative Law Judge ("ALJ") is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *See* Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  In claiming that an ALJ failed to develop the record, a claimant must demonstrate that he or she was prejudiced by that failure. Brown, 44 F.3d at 935 (*citing* Kelley v. Heckler, 761 F.2d 1538, 1540 n. 2 (11th Cir.1985)).  Prejudice has been found when the record has "evidentiary gaps which result

---

[3]  The colloquy between the Claimaint and the ALJ proceeded, in pertinent part, as follows:

> ALJ:  ...[A]nd because it's an important right, the Law requires that I advise you again on the record, even though you've been told many times before in writing that you have that right.  So you can claim the right to a lawyer or a non-lawyer to represent you here–excuse me–if that's your desire.  If you'd like to do that, just tell me you'd like a continuance, where you could find a lawyer or non-lawyer to represent you, and I'll set the case over for up to 60 calendar days, to allow you an opportunity to do that.  On the other hand, you can waive, and by waive, I mean, give up your right to a lawyer or non-lawyer to represent you, and in that case, we'd have the hearing today. ...What would you like to do?
>
> CLMT: I got it - - right, depending on the outcome of this hearing, do I have an appeal?
> ALJ:  Well, you're asking me for legal advice, ma'am–
> ...
> CLMT:  I'm here. We might as well go on with it.
> ALJ:   All right.  We'll call that a waiver then. ...

in unfairness or 'clear prejudice.' " Id. quoting Ware v. Schweiker, 651 F.2d 408 (5th Cir.

Unit A July 1981), cert. denied 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (19    )

Claimant argues that she was prejudiced in three specific ways:

    A) *Failure to Question about Impairments*

    The ALJ never questioned petitioner about her impairments at the hearing.  He

asked her one question about how she came to file, but nothing else.  He nonetheless

made a decision based on the *credibility* of her claims of disability compared to the

medical records.

    In response, the Commissioner argues that claimant waived representation, and

was familiar with the process.  Even if plaintiff had been represented, however, the ALJ

owed her the duty to develop the record.  The Commissioner attempts to counter the

failure to ask the claimant any questions about her disability by noting that the ALJ asked

claimant if there was anything else she wanted to tell him, and notes that his tone was

friendly throughout the hearing.  Despite the fact that the ALJ did not prevent the

Claimant from testifying, either by foreclosing her testimony or making her feel

uncomfortable, the record reflects that the ALJ did nothing to elicit the relevant testimony

from Claimant.   Based on the record, the court finds that this failure, especially where

coupled with a credibility determination concerning her complaints, prejudiced the

Claimant and violated the ALJ's duty to develop the record.  This violation requires

remand of this action.  Notwithstanding this determination, the court addresses plaintiff's

other claims.

B) *Failure to Request Updated Medical Records*

Claimant also challenges the ALJ's failure to request updated medical records, despite the fact that the Commissioner had last sought and received records almost a year before the hearing.  In addition to the lapse of time as notice of the need to update, the record contained a Disability Report showing that petitioner had been diagnosed with beginning stages of COPD in March 2006, 9 months before hearing, as well as a "recent medical treatment form" which the Commissioner later described as relating to issuance of a handicapped parking placard and/or handicapped fishing permit.

The Commissioner argues that claimant has not demonstrated prejudice from this alleged failure, as claimant has not shown any additional material medical records the ALJ would have received had he requested them.  Claimant obtained counsel following the issuance of the denial by the ALJ, and was represented at the Appeals Counsel stage. She could have submitted any additional records to the appeals counsel, or could have pointed to their existence and importance before this court to demonstrate prejudice.

With respect to the claimant's diagnosis with the beginning stages of COPD, the government argues that it comes too late, after the claimed disability and the filing of claimant's application.  The undersigned finds that Claimant does not appear to claim that the diagnosis has any relevance to claimant's condition at or before the time she filed her application which is the relevant time for a determination of her disability. *See* Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (Evidence is only material if it relates to the time period for which benefits were denied and is not evidence of subsequent

6

deterioration of the previously non-disabling condition.); *see also* <u>Holladay v. Bowen</u>,

848 F.2d 1206 (11th Cir.1988) (An ALJ is not required to order medical evidence to have

a complete record unless the record establishes that it is necessary to enable the ALJ to

render his decision.)  As such, the undersigned finds that claimant has failed to

demonstrate prejudice from the failure of the ALJ to request updated medical records.

    C)  *Failure to Obtain Physical Capabilities Evaluation*

    Claimant also asserts that the ALJ failed to obtain a physical capacities evaluation

from an examining source.  Claimant argues that lack of any professional determination

of claimant's remaining work-related abilities and limitations renders questionable the

ALJ's determination at the fifth stage of the sequential evaluation[4] that she has the

---

[4]

    (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)

    (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)

    (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)

    (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (See paragraph (f) of this section and § 404.1560(b).)

    (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. (See paragraph (g) of this section

residual functional capacity to perform the full range of sedentary work.

In response, the Commissioner argues that the ALJ obtained a consultive medical examination by Dr. Madden.  (Tr. 372-376) Claimant was examined on March 6, 2006, and reported back pain, urinary incontinence, bilateral leg numbness.  However, the record is unclear as to what specialty Dr. Madden practices, and thus the court cannot determine whether the examination by Dr. Madden rendered unnecessary a consultive examination by a doctor specializing in orthopedics.  Nonetheless, Dr. Madden's report indicated a decrease in Claimant's ability to lift heavy objects, and a normal ability to sit, stand, walk, carry and handle objects.

The Commissioner also states that Dr. Bertucci, a state agency physician, concluded[5] that plaintiff retained physical functional capacity to lift 20 lbs occasionally and 10 lbs frequently, sit six hours and stand/walk for two hours, out of an eight hour work day.  It is not clear from the record presently before the court whether all necessary consultive examinations were conducted prior to the hearing.  Nonetheless, the ALJ's failure to question the claimant at all on her symptoms, impairments or residual capacity is sufficient grounds for remand.

II.   The Commissioner erred in failing to identify which of Ms. Hall's impairments he found to be severe.

---

and § 404.1560(c).)
20 C.F.R. §404.1520 (a)(4)(i)-(v).

[5]  The court is uncertain whether Dr. Bertucci examined claimant or just her file on behalf of the state agency.

The ALJ stated in his findings of fact that "[t]he claimant has an impairment or a combination of impairments considered 'severe' based on the requirements in the Regulations.  20 C.F.R. §416.920(b)."  However, he never identifies *which* impairments he found to be severe.  This is a problem at step 2 of the sequential evaluation, effectively eliminating the usefulness of this step to a reviewing court.  The failure of the ALJ to expressly state what impairments were severe is allowable where the decision reflects that the determination was made implicitly.  <u>Kemp v. Astrue</u>, 2009 WL 163019 at *3 (11th Cir., January 26, 2009)(unpublished).

The ALJ also then decided the case at step 5 on the basis of "The Grid", specifically Rule 201.21.[6]  This determination was made without a Vocational Expert, which is only allowable if there are no non-exertional impairments. The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's non-exertional impairments are so severe as to prevent a full range of employment at the designated level." <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1078 (11th Cir. 1996) quoting <u>Passopulos v. Sullivan</u>, 976 F.2d 642, 648 (11th Cir.1992). "It is only when the claimant can clearly do unlimited types of [ ] work ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202 (11th Cir.1989) (citation omitted);  <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990) (Exclusive reliance

---

[6]  Medical-Vocational Guidelines, 20 C.F.R. § 404, subpt. P, app. 2.

9

upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities.)  The record reflects that the claimant suffers from depression and high blood pressure, both of which are non-exertional impairments; if either of these is 'severe', a Vocational Expert was required.

The government argues that, if the ALJ did not clearly identify which of claimant's impairments was "severe," the lack of a vocational expert was not prejudicial because the ALJ went on to discuss the medical evidence in the body of the order.  The existence of a non-exertional impairment at this level would preclude use of The Grid in step 5. Accordingly, the court finds this failure sufficient to require remand.

III.    <u>The Commissioner erred in finding that Ms. Hall retains the residual functional capacities to perform sedentary work without obtaining a physical capacities evaluation.</u>

Claimant next argues that the ALJ should have ordered a consultive examination to determine what her capabilities were.  However, as claimant has previously stated, the ALJ did not update the medical records at the time of the hearing and may not have obtained all of her medical records.  Since the content of those records is unknown, it is difficult to say that a consultive examination was required.  They are generally ordered when the record is insufficient to allow a determination; in the absence of medical records for the last year prior to the hearing, neither the court nor the ALJ could definitively determine whether such an examination was necessary.

The government urges that ALJ's credibility determination was sufficiently supported by the medical records presented in the record; and such factors as the lack of

pain medication, claimant's daily activities, and what the Commissioner's counsel describes as inconsistencies, such as use of a cane that was not prescribed and arguably was unnecessary, and her decision to keep smoking despite being warned it contributed to her high blood pressure.  Additionally, the Commissioner did send claimant on some consultive examinations; though the court is not certain what specialties were consulted, given the determination that remand is appropriate, the court need not determine whether this aspect of the record was adequately developed.  On remand, the Commissioner may determine whether additional examinations are necessary.

IV.    The Commissioner erred in relying on "the Grid" to shoulder his burden of proof at the fifth step of the sequential evaluation.

Claimant next argues that the ALJ erred in his reliance on "the Grid" at the final step of the evaluation. While reliance on the grids is not precluded, the Eleventh Circuit has noted some limitations.  *See* Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995).  In Foote, the court opined, in pertinent part, as follows:

> The ALJ has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant.  This burden may sometimes be met through exclusive reliance on the grids. However, exclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.

Id. at 1558(internal quotations and citations omitted).

Petitioner's argument ties back to the first assignment of error: in the absence of a holding that the petitioner had no severe non-exertional impairments, it is improper to

complete step 5 without a Vocational Expert. Id. at 1559("If the grids are inapplicable, the Secretary must seek expert vocational testimony." "The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony.")

The Commissioner argues that the ALJ could evaluate the existence of jobs in the national market because claimant's depression did not cause significant problems. "In this case, the ALJ found that Plaintiff had only a mild restriction in activities of daily living, a mild to moderate estimated difficulty in maintaining social functioning, a mild to moderate deficiency of concentration, persistence, or pace, and no episodes of decompensation."  (Doc. 13 at 8) However, this argument seems to contradict the Commissioner's assertion, above, that the ALJ found her depression "severe" which, in Social Sexurity filings, means simply that the impairment significantly limits the individual's physical or mental capacity to perform basic work-related functions. Nonetheless, the court can not assure itself, on the record presented, what the ALJ's reasoning was on this issue.  Accordingly, for this reason the court recommends remand.

V.    The Court should remand if the ALJ's reasoning and compliance with the sequential evaluation is not clear from the decision.

Finally, Claimant argues that the case should be remanded further develop the record.  The ALJ is required to give the reviewing court a roadmap to his reasoning.  This is not a separate grounds asserted by the claimant, but is a general rule in Social Security

cases. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (5th Cir. 1981). "The ALJ's decision states merely that '(c)laimant is able to perform the requirements of sedentary work activity.' A general finding of this nature fails to demonstrate that the Secretary has met the burden of showing that the claimant retains the residual capacity to work." Id. at 736. Such a failure is grounds for remand.[7]

Conclusion

For the reasons set forth above, the undersigned RECOMMENDS that the order of the Commissioner denying benefits be VACATED, that this action be REMANDED to the Commissioner for further proceedings in conformity with this opinion, and that Judgment be entered in favor of the petitioner. *See* Magistrate Judge's Explanation of

---

[7] At step four of the sequential evaluation, the ALJ determined that Claimant could no longer perform her prior work as a cashier, but at step five held that she could perform the full range of sedentary jobs. Numerous cases have categorized cashier as a sedentary occupation. See e.g. Smith v. Social Security Admin., 272 Fed. Appx. 789, 784 (11th Cir. 2008) (Vocational Expert testified that, where claimant could perform sedentary work, jobs included cashier); Green v. Social Security Admin., 223 Fed.Appx. 915, 920 (11th Cir. 2007)(VE testified that cashier jobs were available at both light and sedentary levels of exertion); Jones v. DHHS, 941 F.2d 1529, 1532 (11th Cir. 1991)(VE held that claimant who was limited to sedentary work could be a cashier). It is not clear from the ALJ's order denying her claim how he determined that she was unable to perform her past relevant work as a cashier and still was able to work the "full range" of sedentary jobs. On remand, the ALJ may wish to clarify this point.

Procedural Rights, attached, for important information on how to proceed.

DONE this the 6th day of October, 2009.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within

**five (5) days** of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, **unless a different time is established by order**. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Empahsis added)  A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.